# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| P.R., M.R., and N.R., Individually and as next friend of S.R. § § § | |
| V. § | NO. A-08-CA-821 LY |
| § | |
| CENTRAL TEXAS AUTISM CENTER, § INC., and CARA BROWN § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
         UNITED STATES DISTRICT JUDGE

Before the Court are: Plaintiffs' Motion to Remand (Clerk's Doc. No. 15); Defendants' Response (Clerk's Doc. No. 19); and Plaintiffs' Reply (Clerk's Doc. No. 20). The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Having reviewed the Motion, Response, Reply, the entire case file, and the applicable law, the Court enters the following Report and Recommendation.

## I. FACTUAL BACKGROUND

In the Fall of 2006, S.R. – who suffers from severe emotional disabilities which cause him to have heightened anxiety, overwhelming frustration and episodes of physical aggression – was enrolled in the fourth grade in the El Campo Independent School District ("ECISD" or "school district"). ECISD identified S.R. as a student with a disability under the "the autism eligibility category" of the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. See Exhibit B to Defendants' Response at p. 3. S.R.'s father, P.R., and grandparents, M.R. and N.R.

("Plaintiffs"), dispute that S.R. is autistic and argue instead that he suffers from reactive detachment disorder and post-concussion syndrome. Regardless of S.R.'s diagnosis, his emotional issues are considered a disability under the IDEA and thus the school district was required to provide S.R. with adequate special education classes and related services to address that disability.

Plaintiffs allege that despite S.R.'s disabilities, "S.R. was able to navigate elementary school in a regular El Campo Independent School District ("ECISD") classroom with the assistance of a teacher's aide until the fall of 2006," when S.R's behavior deteriorated. Plaintiffs' Complaint at 3 in 4:08-CV-03263. In October 2006, S.R.'s classroom aide resigned and S.R.'s aggressive behavior escalated to the point that he had to be repeatedly physically restrained by school employees. In response to S.R.'s negative behavior, in December 2006, ECISD hired Central Texas Autism Center, Inc. ("CTAC"), to perform a functional behavior assessment ("FBA") of S.R. Cara Brown performed the assessment of S.R. and recommended that the School District implement a Behavior Intervention Plan ("BIP") for S.R. which included assigning S.R. to a self-contained classroom (*i.e.*, a classroom solely occupied by the child and the child's teacher and aide). Ms. Brown further recommended that S.R. be subjected to various intervention techniques which were designed to reduce maladaptive behaviors.

Plaintiffs allege that the BIP developed by CTAC was ill-advised and caused S.R. to become increasingly frustrated and aggressive, which ultimately led to "S.R. being physically restrained forty-two times and deprived of comforting objects." Plaintiff's State Court Petition at p. 8. Plaintiffs contend that Defendants ignored their repeated warnings that a stressful and inconsistent environment would cause S.R. to become extremely frustrated and physically aggressive. In addition, they contend that the Defendants failed to follow the advice of S.R.'s treating physicians

2

and psychologists that S.R. should be placed in a regular classroom instead of an isolated self-contained classroom. Plaintiffs also argue that Ms. Brown was not adequately trained to deal with a student with S.R.'s disabilities and contend that Ms. Brown's proposed plan "required S.R.'s teachers and aides to purposefully and artificially subject him to the very frustration that physicians, psychologists and psychiatrists had recommended be avoided." Plaintiff's State Court Petition at p. 7. Plaintiffs allege that because ECISD and the Defendants refused to alter S.R.'s BIP despite its complete failure, they withdrew S.R. from ECISD and opted to home-school him for the 2007-2008 school year. Plaintiffs aver that "[t]oday, S.R. is a happy 6th grader earning A's and B's in his regular education classroom in the Louise Independent School District in Louise, Texas." Petition at p. 2.

## II. PROCEDURAL BACKGROUND

On October 7, 2008, Plaintiffs filed the instant lawsuit against Central Texas Autism Center, Inc. and Cara Brown in the 126th Judicial District of Travis County, Texas. Plaintiffs allege the following Texas law causes of action: assault (infliction of bodily injury, offensive physical contact, and threat of bodily injury); fraud by non-disclosure; conspiracy; negligence and gross negligence; breach of contract; intentional infliction of emotional distress; deceptive trade practices; respondeat superior; ratification; and a claim for attorney fees.

On November 3, 2008, Plaintiffs filed another lawsuit in the Houston Division of the Southern District of Texas against ECISD and several school district employees. See *S.R. v. ECISD*, et al, 4:08-CV-03263. In their Southern District lawsuit, Plaintiffs allege causes of action under the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1400, *et seq*., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1983.

3

On November 7, 2008, Defendants removed Plaintiffs' state lawsuit to the instant federal court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1441(b). Although Plaintiffs did not allege any federal causes of action in their Petition, Defendants contend that Plaintiffs' state law claims actually arise under the IDEA. Plaintiffs filed the Motion to Remand now before the Court, arguing that this Court does not have jurisdiction over their state law claims. Defendants disagree and contend that Plaintiffs' state law claims "arise under" the IDEA and further argue that "it is only logical" to combine the two identical cases in which [Plaintiffs] sue CTAC and El Campo I.S.D. in different courts." Response at p. 2

### III.  ANALYSIS

**A.  Removal Jurisdiction**

The party invoking the removal jurisdiction of federal courts bears the burden of establishing federal jurisdiction. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008). In the absence of diversity jurisdiction, federal-question jurisdiction is required for removal. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Congress allows for removal of a case from state court to federal court when a plaintiff's complaint alleges a claim "arising under" federal law. 28 U.S.C. § 1441; *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

Generally, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. See also, *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir.

2008). Under the well-pleaded complaint rule, the plaintiff is the master of his claim and may avoid federal jurisdiction by exclusively relying on state law, even where a federal claim is also available. *Id.* Moreover, a case may not be removed to federal court on the basis of a federal defense, "even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393; See *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003) (same).[1]

A case with only state law claims may "arise under" federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983); see *Empire HealthChoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (holding that a case arises under federal law if a well-pleaded complaint establishes that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law). However, for a district court to exercise federal-question removal jurisdiction on this basis, the plaintiff's claim must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfr.*, 545 U.S. 308, 314 (2005).

Finally, the Court notes that "[b]ecause removal raises significant federalism concerns, the removal statute is strictly construed 'and any doubt as to the propriety of removal should be resolved

---

[1] The complete preemption doctrine is an exception to the well-pleaded complaint rule. However, preemption is not an issue in this case since Defendants have not argued that Plaintiffs' state law claims are preempted by the IDEA. Regardless, courts have found that the IDEA does not completely preempt a plaintiff's state law claims. See *D.K. v. Solano County Office of Educ.*, 2008 WL 5114965 at * 6 (E.D. Cal. Dec. 2, 2008) (holding that IDEA did not preempt plaintiff's state law tort claims); *Converse County Sch. Dist. No. Two v. Pratt*, 993 F. Supp. 848 (D. Wyo. 1997) (noting that "the rule is that the IDEA preempts state law only if the state standards are below the federal minimum").

5

in favor of remand.'" *Gutierrez*, 543 F.3d at 251 (quoting *In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).

**B. Plaintiffs' State Court Petition**

Although Plaintiffs's Petition does not plead any federal claims, Defendants argue that removal was proper in this case because Plaintiff's state law claims actually "arise under" the IDEA. However, instead of addressing the issue of whether Plaintiffs' lawsuit raises a "substantial" federal claim, Defendants' Brief simply states that removal was proper because "[i]t is only logical to combine the two identical cases in which [Plaintiffs] sue CTAC and El Campo I.S.D. in different courts for conspiring with one another to cause the identical alleged injury—particularly because CTAC was serving as an agent of El Campo I.S.D., and because El Campo I.S.D. is contractually required to indemnify CTAC." Defendants' Response at p. 2. Despite the lack of argument on the pertinent issue, the Court will examine Plaintiffs' Petition to determine whether it raises an "actually disputed" and "substantial" issue under the IDEA.

Plaintiffs' Petition alleges that S.R. suffered severe physical and emotional trauma as a result of the educational plan developed and implemented by CTAC and Ms. Brown. Specifically, Plaintiffs allege that "Defendants developed an educational plan that had at its core a plan of solitary confinement, mind games, and physical restraint . . .which resulted in S.R.being physically held on the floor of his empty classroom by multiple adults, sometimes for more than an hour, nearly every other school day when he acted out (as would any rational person, child or adult) in response to Defendants' mind games." Petition at 3. Plaintiffs further allege that "Ms. Brown declared war against a child she decided was acting out simply to gain attention or to avoid fulfilling demands" and that CTAC failed to send a more qualified behavior analyst to observe S.R., properly supervise

6

Ms. Brown, or to adjust S.R.'s BIP, "even when it became obvious that Ms. Brown's plan of attack was failing miserably." Petition at 11. In addition, Plaintiffs aver that M.R. and N.R. also suffered severe mental anguish as they watched S.R. regress emotionally and cognitively and contend that they have also incurred substantial expenses "as experienced professionals continue to attempt to repair and redress the damage done to S.R. by Ms. Brown's BIP." Petition at 12.

As noted, Plaintiffs' Petition alleges only state law causes of action.[2] The question the Court must address is whether the adjudication of these state law claims will require the interpretation of the IDEA and thus whether Plaintiffs' claims actually arise under federal law. In addressing this issue, the Court will first examine the basic framework and purpose of the IDEA.

**C.    The IDEA**

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living," and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)-(B). To achieve this aim, the IDEA compels those states receiving federal funding to educate children with disabilities "to the maximum extent appropriate . . . with children who are not disabled," 20 U.S.C. § 1412(a)(5), and to do so "in the

---

[2]While Plaintiffs' Petition does not allege a cause of action under the IDEA, Plaintiffs' Petition does mention the IDEA several times in their Petition in reference to the educational plan developed for S.R. See Petition at 3. However, the mere reference to a federal statute in a pleading "will not convert a state law claim into a federal cause of action if the federal statute is not a necessary element of the state law claim and no preemption exists." *Easton v. Crossland Mortg. Corp.*, 114 F.3d 979, 982 (9th Cir. 1997) (finding no removal jurisdiction when a plaintiff's sexual harassment complaint referred to Title VII of the Civil Rights Act and the U.S. Constitution but sought only state law remedies).

7

least restrictive environment consistent with their needs." *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 128 (5th Cir. 1993). Although the free appropriate public education "need not be the best possible one, nor one that will maximize the child's educational potential," it must "be an education that is specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction." *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir. 1997) (quoting *Bd. of Educ. of the Hendrick Hudson Sch. Dist. v. Rowley*, 458 U.S. 176, 188-89 (1982)), *cert. denied*, 522 U.S. 1047 (1998). Because the State of Texas receives federal education funding, all school districts within its borders must comply with the IDEA. *See id.* To meet the IDEA's strictures, the various school districts must provide each disabled student on their rolls with a free appropriate public education that is tailored to each disabled child's needs through an "individualized educational program" ("IEP"), which is a written statement prepared at a meeting attended by a "qualified" and "knowledgeable" school district representative, a teacher, the child's parents or guardians, and, when appropriate, the child. *See* 20 U.S.C. § 1414(d)(1)(B). In Texas, the committee responsible for preparing an IEP is known as an Admissions, Review, and Dismissal Committee ("ARD Committee"). 19 Tex. Admin. Code § 89.1050

The IDEA provides a "comprehensive system of procedural safeguards" designed to promote compliance with its mandates. *See Honig v. Doe*, 484 U.S. 305, 308 (1988); *Rowley*, 458 U.S. at 205 (explaining the elaborate and highly specific procedural safeguards embodied in the IDEA); 20 U.S.C. § 1415 (outlining series of detailed procedural safeguards). Among these safeguards, the parents of the disabled child must be provided with "[a]n opportunity to present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," as well as an "impartial due

process hearing" conducted by the State educational agency or by the local educational agency. 20 U.S.C. § 1415(b)(6) & (f)(1)(A). After exhausting state administrative remedies, an aggrieved party under the IDEA accrues "the right to bring a civil action in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy." *Id.* § 1415(i)(2)(A). Thus, the IDEA permits parents to file lawsuits in state *or* federal court after exhausting their administrative remedies.[3]

**D.    Do Plaintiffs' claims raise a substantial issue under the IDEA?**

As detailed above, the IDEA's focus is on the educational needs of disabled students and it sets forth detailed procedures designed to ensure that a disabled student receives an education that meets certain minimal requirements. *Morris v. Dearborne*, 181 F.3d 657, 674 (5th Cir. 1999). The statute also provides parents with a vehicle to challenge the state's education plan for their child through an administrative process and, ultimately, through the state or federal courts. S.R.'s family took advantage of this private right of action and filed a lawsuit in the Southern District of Texas against ECISD and several school district employees alleging a claim under § 1415(i)(2)(A) of the IDEA (as well as alleging claims under the Rehabilitation Act, the Americans with Disabilities Act, and the Civil Rights Act of 1964). See *S.R. v. ECISD*, et al, 4:08-CV-03263. In that lawsuit,

---

[3]While the fact that the the IDEA provides the plaintiff with the choice of state or federal court "does not preclude the removal of the resulting action to federal court," *Ullmo v. Gilmour Academy,* 273 F.3d 671, 680 (6th Cir. 2001), the underlying lawsuit still has to assert claims "arising under" the IDEA for removal to be proper. Moreover, even though the IDEA incorporates some state laws concerning special education, it does not necessarily mean that federal courts have jurisdiction to review a case that turns entirely on state law issues. See *Bay Shore Union Free Sch.. Dist. v. Kain*, 485 F.3d 730, 734 (2nd Cir. 2007) (holding that federal court did not have jurisdiction over school district's lawsuit under the IDEA seeking review of New York State administrative decision holding that district was obligated by state law to provide one-on-one aide at parochial school, where the case "turns entirely on a state-law issue").

Plaintiffs allege, in part, that the school district violated the IDEA by impeding S.R.'s rights to a free appropriate public education and by failing to develop an individualized educational program and behavior intervention plan as required by the statute. See *Id.*

In contrast, in the instant lawsuit Plaintiffs have not brought a claim under the IDEA, are not complaining about the educational needs of S.R. and have not named the school district as a defendant in this case. Rather, Plaintiffs' Petition asserts only tort-based state law claims based on S.R.'s alleged physical and emotional injuries—allegations which fall outside the scope of the IDEA. There is no provision in the IDEA which addresses non-educational tort-based allegations like those asserted in this case. While the IDEA provides for prospective injunctive relief, compensatory monetary relief for physical injuries is not available under the IDEA. *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124-5 (1st Cir. 2003) (holding that tort-like money damages, as opposed to compensatory equitable relief, are not available under IDEA because the "IDEA's primary purpose is to ensure FAPE, not to serve as a tort-like mechanism for compensating personal injury"). See also, *Charlie F. v. Bd. of Educ.,* 98 F.3d 989, 992 (7th Cir. 1996). Thus, numerous courts have held that non-educational tort-based claims are not properly asserted under the IDEA. For example, in *Morris v. Dearborne*, 181 F.3d 657, 674 (5th Cir. 1999), the parents of a four-year old child with a speech disability sued their child's teacher for falsely accusing the parents of sexually abusing their daughter. In addition to asserting constitutional claims under § 1983 and various state law tort claims, the parents also asserted a claim under the IDEA, arguing that the teacher's use of a facilitative communicator device[4] on the child violated the IDEA because the school failed to

---

[4]The court described a "facilitative communicator device" as a word processing device used by a person known as a "facilitator" (in this case, the teacher) who supports the arm of a developmentally disabled or mechanically deficient individual so as to allow that individual to type.

provide written notice to the parents before changing the child's individualized education program by using the device. The defendant had argued that the IDEA does not require specific devices or methodologies to be included in the student's individualized education program. In concluding that the plaintiffs in the case had not stated a valid cause of action under the IDEA, the Fifth Circuit stated the following:

> In our view, both [parties'] positions miss the mark. The IDEA mandates a free public education for each child and sets forth procedures designed to ensure an education that meets minimal requirements. 20 U.S.C. §§ 1412(1) & 1415(a)-(e). The use of FC [facilitative device] does not give rise to a cause of action in this case because of some potential impact this unique technology had on Hilary's education. Rather, Plaintiffs' damages arose from the fraudulent use of the FC to manufacture false allegations of sexual abuse against Hilary's parents. No one has pointed to, and we are unable to discern, any provision in the IDEA that provides substantive or procedural protection against such atrocity. The Plaintiffs' remedy, upon proving their claims, lies elsewhere. We therefore hold that the district court erred in denying summary judgment for [the defendant] on all claims bottomed on the IDEA.

*Id.* at 674. Similarly, in *Padilla School Dist. No. 1 in the City and County of Denver*, 233 F.3d 1268 (10th Cir. 2000), the Tenth Circuit held that a disabled student seeking monetary damages for physical injuries was not required to exhaust her administrative remedies under the IDEA since the plaintiff's injuries could not be redressed by the IDEA's administrative procedures and remedies, reasoning:

> So far as we can tell in the instant case, Plaintiff seeks damages solely to redress the fractured skull and other physical injuries she suffered allegedly as a result of the school district's and board of education's purported ADA violations. Plaintiff makes no complaints regarding her current educational situation. Indeed, she expressly attests that her new school "meets her educational needs" and that she presently receives "the full benefits of a free and appropriate education in an integrated, least restrictive educational environment." Under these narrow circumstances, we fail to see how the IDEA's administrative remedies, oriented as they are to providing

---

*Id.* at 662.

prospective educational benefits, could possibly begin to assuage Plaintiff's severe physical, and completely non-educational, injuries.

*Id*. at 1274.[5]

Like the plaintiff in *Padilla*, Plaintiffs are not complaining about S.R.'s current educational situation (which they contend is perfectly adequate) and are not seeking a change to S.R.'s BIP (since he is no longer at the school), but rather are seeking monetary damages for physical and emotional injuries. Such non-educational, tort-based claims are not permitted under the IDEA and thus cannot "arise under" the statute. *See Reuther v. Shiloh Sch. Dist.*, 2008 WL 191195 at * 3 (S.D. Ill. Jan. 18, 2008) (remanding case to state court after finding that plaintiff's negligence claims based on physical injuries he received at the school did not arise under the IDEA where plaintiff was seeking damages for only physical injuries).

Finally, the Court notes that Plaintiffs have only named CTAC and Cara Brown as defendants in this case. Importantly, CTAC and Cara Brown are not subject to direct liability under the IDEA since CTAC is a private corporation and Ms. Brown is a private individual. The IDEA and its implementing regulations apply "only to the State and other public agencies," not to private entities or private schools in which public agencies may place children. *St. Johnsbury Academy v. D.H.*, 240 F.3d 163, 171 (2nd Cir. 2001) (holding that private high school could not be liable under the IDEA). See also, *Ullmo Ex. Rel. Ullmo v. Gilmour Academy*, 273 F.3d 671, 679 (6th Cir. 2001) (holding that

---

[5]See also, *McCormick v. Waukegan Sch. Dist.*, 374 F.3d 564, 569 (7th Cir. 2004) (holding that student with muscular dystrophy, alleging that school's violations of his IEP had resulted in physical and emotional injuries, was not required to exhaust administrative remedies available under IDEA before filing federal lawsuit for money damages since student's injuries were non-educational ones for which IDEA did not provide remedy); *Witte v. Clark County Sch.* Dist., 197 F.3d 1271, 1275-76 (9th Cir. 1999) (holding that disabled student's claim for monetary damages for alleged physical abuse by the school district was not relief available under the IDEA and thus plaintiff did not have to exhaust administrative remedies under the IDEA).

private parochial school was not subject to liability under the IDEA since it is not a public administrative body"). The IDEA places the duty for complying with the statute upon public agencies, not private entities such as CTAC. *See Koehler v. Juniata County Sch. Dist.,* 2008 WL 1787632 at *7 (M.D. Pa. April 17, 2008); *E.D. v. Sch. Dist. of Philadelphia,* 2007 WL 1221216 at * 4 (E.D. Pa. April 25, 2007). "There is no provision that imposes upon a private entity the obligation to ensure compliance with the IDEA." *Id.* Even when a public agency places a student in a private school or facility, the statute and its implementing regulations mandate that the public agency is responsible for ensuring that the IDEA is followed. *Id.* Accordingly, CTAC and Ms. Brown are not proper parties under the IDEA.

Based upon the foregoing, the Court finds that Plaintiffs' claims do not raise a question of disputed federal law that would support federal court jurisdiction in this case. Accordingly, the Court recommends that this case be remanded to state court.

**D.     Attorney's Fees**

Plaintiffs argue that they are entitled to an award of attorney's fees for Defendants' improper removal of this case. The Court disagrees.

The removal statute provides that "[a]n order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C.A. § 1447 (emphasis added). However, the Supreme Court has clarified that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal, " and "[c]onversely "when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). In making this determination, the district court "do[es] not consider the

13

motive of the removing defendant." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292-93 (5th Cir. 2000). Rather, the court must consider the objective merits of removal at the time of removal, irrespective of the ultimate remand. *Id.* The Court finds that Plaintiffs' references to the IDEA in their Petition and the facts of the case which require reference to the IDEA clearly provided an "objectively reasonable basis for seeking removal" in this case. Accordingly, Plaintiffs' request for attorney's fees should be DENIED.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned RECOMMENDS that the District Court GRANT Plaintiffs' Motion to Remand this case to state court (Clerk's Docket No. 15). However, the Court RECOMMENDS that the District Court DENY Plaintiffs' request for attorney's fees under 28 U.S.C.A. § 1447.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28

U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 15th day of May, 2009.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE